The second case is 55076, which is Baroni v. Seror, who is the Chapter 7 trustee. Mr. Hayes, you're also the appellate in that argument. I guess Jessica Bagdanov is the counsel for the trustee. If you'd like to proceed, Mr. Hayes, on that one. Thank you, Your Honor. Yes, may it please the Court, John Hayes, appearing for the appellant, Mrs. Baroni. Your Honor, this is, as I started to say, the last matter. This case is about the plain language of the Bankruptcy Code. Section 1141B says, unless otherwise provided for in the plan, all property revests. That's what the plan said. It did revest, it left the bankruptcy estate, and it went to her as the reorganized debtor. Section 1141C said that property dealt with by the plan is, unless otherwise provided for in the plan, shall be free and clear of all claims of creditors. Let me ask you this. I, of course, acknowledge what the statute says. But, as you know, the District Court, and I assume Mr. Brash also analyzed this, that the plan did not contemplate what would happen in the event this plan was converted from an 11 to a 7. The local rules said, if the plan, if a plan doesn't contemplate that, then here's what we're going to do. And the District Court treated it as a procedural rather than a substantive rule, suggesting that there was no violation of the Bankruptcy Code. It just simply filled a vacuum, presumed that the council would be aware of the local rule, and if they didn't do anything about it, then in effect waived their argument. What's your response to that? Your Honor, you know what I'd like to say about that? I filed a plan last Friday for an unrelated case, and it really occurred to me that the argument is being made, well, it's sort of optional, you just can negotiate it away. It occurred to me to leave that out of the plan that I was filing, even though the order says that the property shall revest. And I put it in there, I put it in the last 100 plans I filed, that Chapter 11 plan, it's mandatory. And our view is that it amends the Bankruptcy Code. But to try to answer your question a little more directly than that, the idea that Congress said the property revests and the property is free and clear of all claims, the idea that that doesn't cover what happens six years or even 20 years later, maybe the case will be converted. And boy, I wonder if the property doesn't revest back, even though that would basically be a revocation of the plan. And I wonder if, well, maybe it was sort of free and clear when the plan was confirmed, but there's this lingering, well, maybe it's not free and clear later, depending on what happens. That is a huge amount of conjecture about what was Congress thinking when it stated in very clear language that the property is free and clear. I take that point, but let me just ask you this. Do you concede that if Local Rule 3020-1 applies that you lose on this matter? Boy, I just can't comprehend how I could concede on that. I'm not asking you to concede the case. I'm just saying that if, in fact, we believe that Local Rule 3020-1 does not violate the bankruptcy code, that it is the default procedural rule in the district, do you not agree that under that circumstance you lose on this point? Could it be otherwise? I can't. I mean, I guess I have to say yes, but that's really like saying do you concede that you lose. I mean, if you lose, you lose. But if I could, I'd like to point out that Section 348 of the bankruptcy code deals with conversion. What happens when a case is converted? And it actually has a fairly lengthy section that deals with how does it work when a Chapter 13 is converted to Chapter 7. In Chapter 13... But there the Congress actually decided to put in what happens, right? Yes. And they didn't do that here. Yes, which means they didn't think it was necessary. The language says what it says. And, you know, if it turns out, if this Court rules that the revesting of the property and the reorganized debtor free and clear of all claims is not final because it depends on whether someday the case is reconverted, is converted back to Chapter 7 and all of a sudden everything goes back to the estate, then I question whether... I'll tell you there's going to be difficulties getting plans confirmed in the future, especially when you're trying to get investors, you're trying to get new loans, you're selling property in the plan. The people we're talking to are going to be saying, well, but what happens if the case is converted later on? All you need to do is put it in the contract. That's all you need to do, put it in the plan. Well, you know, that's sort of where I was going before is if the plan... You know, the Court has to make a finding that the plan is feasible, meaning it's probable that it's more likely than not that the debtor is going to actually do what they say. Well, I mean, the reality is here. I mean, would the creditors have ever agreed to the plan if they thought that your client, at the end of the day, after all of the delays and everything, would simply get all of the property free and clear? I don't think there's a chance of that, is there? But that's the point is that it's not free and clear. The liens are still there. The banks that had liens still today, they can foreclose, and they will get paid in full the amount in the plan plus interest for the last six years, plus attorney's fee, plus whatever rights. That lien is still there. They're going to get paid. The unsecured creditors were going to get $50,000. That's payment in full. The plan is a new contract. They got what the court said they have the right to get. And now they're getting more. Yeah, I want to go back to the plan issue again. As I read the Pioneer case, the bankruptcy judge has a great deal of discretion in how this is handled. And given the background, I'm struggling with how Judge Barash violated anything and relying on the local rule because the parties simply didn't contemplate this. This is a vacuum. So when you have a contract and you have not provided what happens in the event of a default and you've got a local rule on how it's to be treated and the statute doesn't say anything to the contrary, what's the problem with that? I mean, I've already said it. The local rule amends the code. It's not property. It's sort of revesting the reorganized debtor and it's subject to unrevesting or literally being transferred back someday down the road. I have a follow-up question to that. I mean, we've been focused a lot on the local rule being a gap filler, but there's also case law in the Ninth Circuit that has addressed the fact that Congress didn't expressly deal with conversion in this context and talks about if a plan, based on its terms, indicates that there's going to be ongoing management of assets, that we're going to look at the function of the plan in making these assessments in terms of what should happen with the debtor's property. So I'm curious, like, with that case law in existence, why doesn't it apply here to say that this plan was drafted clearly with the expectation that there would be lingering strings attached to these properties because the income received from them is going to be used to satisfy the creditors? This is not a free and clear situation. So why doesn't that case law get us to the same point that perhaps the local rule would if we were to apply it? You know, the district court disagreed with that, made a specific finding that the idea that the property didn't revest on confirmation, free and clear of all liens, which Judge Barry said that it didn't. But let me answer it this way. There's two Ninth Circuit cases, and there's two Ninth Circuit BAP cases, and two Ninth Circuit BAP cases on Chapter 13. None of them talk about whether Section 1141 applies when the case is converted to Chapter 7. None of them said, well, boy, I wonder whether maybe I don't even have to get into what the plan says. Maybe 1141 just doesn't apply. They all focused on the plan, and they all focused on specific assets in the plan. And what the case has said is that the plan says everything revests, but actually, especially in Pioneer, actually as to this new corporation that was formed, and all the assets were put in there, and all the assets were dedicated to payment of creditors, as to that corporation, it didn't revest in the debtor, and therefore it's still property of the bankruptcy estate, and therefore still subject to the trustee. What's the difference between that and the case we have here? There's no separate corporation, but other than that, what's the difference? Well, in this case, there's no chance that the rental properties were dedicated to the payment of creditors. The rent is income, and the rent has to be used. The code requires that the debtor pay all of their disposable income. That includes rent. And the best example of that, Your Honor, is the debtor's home. The home, there's no conceivable way anybody could say that the plan dedicated the debtor's home to paying creditors, especially when all they get is $50,000 anyway, plus their rent. Maybe I misunderstood. I thought you said a minute ago that were this not to have gone down the way, in other words, if it had been discharged or dismissed, that the banks would have still had their lien, they still could have foreclosed and gotten all of their money and then some. I think you're saying that it's not true, that they would be free and clear.  It's definitely not free and clear. Their liens are there. They always were there. They're there today. And, yes, from that standpoint, the plan says each property is dedicated to payment of the lien that's on the property. What happened when the case was converted to Chapter 7 is all of a sudden this property is now available to be sold so that it can be used to pay the unsecured creditors, which were paid in full, paid the $50,000 in full. Creditors are going to be paid twice? Pardon? You're suggesting that creditors are going to be paid twice? Absolutely. They've all filed purses of claim for their unsecured claims that were paid under the contract, under the bankruptcy plan. They were paid in full. They were paid $50,000. That's payment in full. Now they've all filed purses of claim saying, well, actually, we're owed more suddenly. Why? Because the rental properties were dedicated to payment of creditors. I mean, that just doesn't follow. I have about a minute left. Want to save your time? Yes. Yes, thank you. Very well. All right. Let's see here. I want to be sure I have this correctly. So you say Bagdanoff, is that correct? Yes, Your Honor. Very good. Very well. Please proceed. Thank you, Your Honors, and may it please the Court. Jessica Bagdanoff on behalf of David Soror, the Chapter 7 trustee and appellee in this matter. I'd like to start where my colleague ended. This statement that the plan provided payment of $50,000 in total for payment to unsecured creditors, that's an incomplete explanation of how Ms. Barone's plan worked as it relates to unsecured creditors. And additionally, it ignores the fact that the debtor has not obtained a discharge in this case. That's a huge point. Plan section Roman numeral 10C talks about this disputed unsecured creditor reserve account. It says, the dispersing agent will distribute directly to the claim holder's pro rata. And then it says, if a surplus arises from the fact that not all claims are allowed, then the money shall revert back to the debtor who will first distribute such surplus to general unsecured creditors to share in a pro rata distribution until such funds are exhausted or until such creditors are paid in full, in which case any excess would revert back to the debtor. So it's not true that the only scenario contemplated by Ms. Barone's plan was that unsecured creditors receive only $50,000, and that's it. That's not the only scenario. And to say otherwise is just not true. And again, as I noted, it minimizes the fact that the debtor materially defaulted under her plan and never obtained a discharge. The debt has not been canceled. So based on what you're indicating there, of course, there would be no double payment to these unsecured creditors. This simply carries out what the plan contemplated, right? That's right. And now I will say the plan does have numerous scenarios that could have happened over the six years of its life. But that's right, that there's the $50,000 pro rata share. It's kind of like a down payment, if you will, and the balance remains, especially because she didn't obtain a discharge. So I want to go back to when my colleague said that the plan did not contemplate conversion in citing the boilerplate statutory provisions of Section 1141B and C that talk about how the property does revest in the debtor upon confirmation, free and clear of creditor claims, as provided in the plan. No one says, and I don't think it's right that the cases or that the bankruptcy court held that Section 1141B and C don't apply in this case. I don't think that's what we're talking about. We're talking about they applied on the conversion date, and the Ninth Circuit Authority is clear that those provisions do not talk about conversion, a potential post-confirmation conversion. It's just not there in the text. They don't talk about it. And that's a statement that is said over and over again by the courts, and the bankruptcy court noted it as well. And so when we're talking about what property vests in the reorganized debtor, it's a modified vesting, right? It is governed by the contractual terms of the plan. And the Pioneer case gives courts a roadmap for how to interpret a plan, a contract, with this specific issue in mind. What property revests? Are there limitations on the vesting? And Pioneer asks some questions about what to look at. So you look at, does the plan address distribution of property to creditors? Who is the plan's intended beneficiary? And in this case, it is first the creditors, and the debtor obtains an excess, right? What powers, if any, does the bankruptcy court retain post-confirmation? Are the assets and or proceeds of assets subject to the interests of creditors? So what is the purpose of this plan? The bankruptcy court rightly found that it retained broad jurisdiction, not just simple jurisdiction. And the point that the bankruptcy court focused on was the fact that this isn't a normal plan of reorganization, if I may. The bankruptcy court talked about how, in this particular case, the debtor disputed the validity of 99 percent of her secured creditors and approximately 97 percent of the unsecured debt. So the plan from its inception contemplated significant litigation. And this was a point that the district court had, I think, a little bit of trouble with in terms of the purpose of the debtor's plan here. Because the district court talked about how the debtor's plan was intended to restructure debt so that it could make the rental properties profitable, right? But that is an incomplete recitation of what the debtor's purpose in her plan was. And your honors will find the purpose of the plan. It's Section 7 of the plan, which is 4 ER 440 and following. And she talks about how she discovered that much trouble existed with respect to the mortgages. The the loan securitizations are not the persons entitled to enforce the claims. And on page 442 of the record, she says debtor is presenting a Chapter 11 plan which restructures debt and creates protections against paying the wrong party on the wrong note. That is what this case is about. And I would ask, you know, in the context of where we've come since then, was this plan proposed in good faith? You know, looking looking with hindsight, which the bankruptcy court can't do, obviously, six years ago, seven years ago. But this plan was unequivocally to pay creditors. Except that she didn't really want to pay them. And I think this is a free house case. The purpose, perhaps the creditors now would retain their secured liens. But as as my colleague mentioned, it's not to keep the unsecured claims. And going to the second factor under Pioneer of what the bankruptcy court's jurisdiction was. Again, the bankruptcy court had exclusive jurisdiction to address the heart of this plan. What are these claims? Are they valid? Does the estate have rights? And the Hillis Motors case is a case that predates Pioneer a bit. But it kind of came at the issue a little bit differently. It talks about does the plan contemplate a post-confirmation estate, if you will? Is there a delayed discharge? In this case, the answer is yes. Is there ongoing work to be done? Does the bankruptcy court have to allow claims? Yes. This was a situation where the property vested in the debtor free and clear, to be sure, subject to the provisions of the plan. The plan did not contemplate conversion. There's nothing in the plan that talks about it. And as Your Honor mentioned, Judge Smith earlier, that the local rule really provides this option that was available at the time. The local rule is a procedural gap filler. It's a piece of bankruptcy case law. It's basically codifying Pioneer, codifying the cases that go after Pioneer, including Captain Blyther's, which is a Ninth Circuit BAP decision cited in our brief, as well as the Kenny G unpublished decision from the bankruptcy court and affirmed by the BAP. If we were to agree with your position, do you think it would be better for us to rely on the local rule or on the pre-existing Ninth Circuit case law that admittedly doesn't address our circumstances that we're faced with today? But I'm just curious which legal authority you think is stronger, if you have an opinion on that. Your Honor, I think the bankruptcy court and district court came to the same result, albeit the district court in a more limited way. And I think it's important for this court to talk about the Ninth Circuit authority as well. I think in respect to the local rule, the matter can be affirmed outright. But with respect to the case law, I think it's important to note that while Pioneer, Captain Blyther's, Kenny G, Hillis Motors didn't have an individual debtor who proposed this type of a plan that contemplated litigation, which is now a decade long with no end in sight. I think the principles of those cases and underpinning those cases really support what the bankruptcy code is all about. And if you look at this from a point of disclosure, one of the things the district court was worried about was that under the trustee's position, if you take Pioneer and interpret it as broadly as we urge, and I think broadly was the word that Judge Fitzgerald used, that any case, any plan would too easily fall within the criteria. And that was concerning to Judge Fitzgerald. But the trustee's position really makes sense from a bankruptcy code and equity perspective. Bankruptcy and specifically Chapter 11 plans are about disclosure. And Judge Smith, I think, pointed out this a little bit earlier today, that it's about disclosing to creditors the universe of things that could happen in the future post-confirmation. Now, nowhere in the plan is disclosed what might happen upon conversion, whether she gets to keep all of her stuff or whether it converts to a Chapter 7 estate. Importantly, though, creditors, even if they didn't object that the language of Local Rule 3020-1 wasn't in the plan, it was on the bankruptcy court website, presumably they had notice of it or would be deemed to know about it, even if they didn't have actual knowledge. And so creditors had the benefit of Local Rule 3020 at the time. She should have disclosed this intent. And I think it's an interesting admission by my colleague, Mr. Hayes, about how in his reply brief and today talking about how all of the plans include 3020 language and that the language has been included in all of his plans, and he thought about not including it. But Local Rule 3020, if I may, Section B, 3020-1B, talks about unless otherwise provided in the plan, every order must contain this language. It's right there. Maybe it's true that creditors wouldn't agree to it, but that doesn't mean you can't try. This debtor didn't. She didn't change the default rule of what happens upon a potential post-confirmation conversion. You know, as I noted earlier, there's numerous avenues this court may take to affirm the turnover order, but in no circumstances is the result urged by the debtor contemplated by the terms of her plan, the bankruptcy code, or the local bankruptcy rules. One thing I do want to point out to this panel is that if the court is inclined to affirm the turnover order, it should also take note of the stay pending appeal that the district court entered on February 5th of this year. It is reflected as docket number 53 in the district court's docket. The trustee respectfully requests that the court affirm the turnover order and also lift the stay that was imposed by the district court concurrently with its decision. So let me ask you just one quick question. Is there a case law that we could look to that indicates that when there is a local rule, such as 3020-1 in this case, that counsel and parties are bound by it as if they had put it in a contract, basically? I don't know the answer to that, Your Honor, off the top of my head. I'm thinking about this in the context of Law v. Siegel, which is a Supreme Court case that's on bankruptcy issues that talks about how, if I may paraphrase it, that you can't interpret one provision of the bankruptcy code to interfere or go against another provision. So you can't use Section 105 of the code to mess with another provision. And so I think that's analogous here. I recognize that a local rule is in no way the same as a statute in the code. But just for purposes of analogy, I think the question would be, does this abridge a right that's substantive? And the answer is no. The last thing I wanted to mention was Mr. Hayes' comments about Section 348. And I think Your Honor's question about it's just not in there. What's also not in the record, Your Honor, is any legislative history talking about that congressional silence when they revised, wrote Section 348 of the code, was that their silence on Chapter 11 conversion was intentional. And we could opine for days about why that intent means something or doesn't. But it is not disputed that it's not in there. And I think the admission in the appellant's paper is about everybody assumes that the local rule applies. And it's the trustee's position that the local rule codifies Ninth Circuit authority on the issue. The Captain Blyther's decision, the Kenny G. decision, even Pioneer itself. And I would advocate, Your Honors, for a broader interpretation of Pioneer than the district court was willing to extend. Because it makes sense. And respectfully, the debtor's position does not make sense. Thank you, Your Honors, unless you have further questions. Other questions by my colleagues? I think not. All right. So, Mr. Hayes, you get to do a wind-up here. Thank you, Your Honor. Yeah, I'd like to comment that I'm a little stunned by the statement that 3020 simply codified Ninth Circuit law. The trustee's position in this case is absolutely everything Ms. Peroni owned when the case was converted. The glasses on her head, her clothes, everything she owned is property of the Chapter 7 estate. Why is that? Because 1141 is unclear about whether the fact that it revested and clear of all liabilities, whether that's unclear. Therefore, everything she owns is property of the estate and can be sold by the trustee. And that Congress didn't do anything about Chapter 11 and 348 because nothing needed to be done, is my opinion. It's clear that the reorganized debtor receives the property and gets on with its activities and does what the plan says. Very well. Any other questions by my colleagues? We thank both counsel for their argument in this very interesting case. The case just argued is submitted and the court stands adjourned for the day. Thank you, Your Honor. Thank you, Your Honor.
judges: Kelly, SMITH, FORREST